AMD
1-12-2009

**U.S. Department of Justice**

**United States Attorney**
**District of Maryland**
**Northern Division**

Rod J. Rosenstein
United States Attorney

Jefferson M. Gray
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4915
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
Jefferson.M.Gray@usdoj.gov

January 12, 2009

Katherine T. Newberger
Assistant Federal Public Defender
Federal Public Defender's Office – Northern Division
100 South Charles Street
Bank America Tower II, Suite 1100
Baltimore, Maryland 21201

Re:  *United States v. Jason Foor*

Dear Ms. Newberger:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by the close of business on Friday, February 13, 2009, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of an Information that will be filed charging him with making false statements for the purpose of obtaining a loan under the Small Business Act, in violation of 15 U.S.C. § 645. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offenses

2. The elements of the offense of making false statements for the purpose of obtaining a loan under the Small Business Act to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

- First, that the defendant made a statement or statements that he knew to be false; and

GOVERNMENT'S EXHIBIT NO. ___1___
CASE NO. __JFM- 09- 089__
IDENTIFICATION: __3/10/09__
ADMITTED: __3/10/09__

- Second: that the defendant made the false statement for the purpose of obtaining a loan, or of influencing in any way, the action of the Small Business Administration (SBA) in connection with a matter arising under the Small Business Act.

*United States v. Notarantonio*, 758 F.2d 777, 781-83 (1st Cir. 1985).

### Penalties

3.  The maximum sentence provided by statute for the offense of making false statements for the purpose of obtaining a loan under the Small Business Act to which the Defendant is pleading guilty is as follows: imprisonment for two (2) years and a fine of $250,000.00. The defendant is also subject to a maximum term of supervised release of one (1) year. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.[1] If a fine is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

The Defendant understands that if he serves a term of imprisonment, is released and begins serving his term of supervised release, and then violates his supervised release conditions, his supervised release could be revoked (even on the last day of its term) and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    (a) If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    (b) If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500.00 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

(c) If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

(d) The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

(e) If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

(f) By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

(g) If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

(h) By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

5.   The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that

the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts attached as Attachment A to this Agreement, which the parties agree could be proved by this Office beyond a reasonable doubt if this matter proceeded to trial, and to the following applicable sentencing guidelines factors:

> The base offense level under the Sentencing Guidelines for offenses under 15 U.S.C. § 645 is **six (6)**, pursuant to U.S.S.G. § 2B1.1(a)(2). An additional **eight (8)** levels are added pursuant to U.S.S.G. § 2B1.1(b)(1)(E) because the amount of the loss ($120,000.00) was greater than $70,000.00, but not more than $120,000.00. Finally, **two (2)** additional levels are added because the defendant acted as an organizer or leader of criminal activity involving fewer than five (5) participants. Thus, his adjusted offense level before applying any reductions is a level **sixteen (16).**

> This Office does not oppose a **two (2)** level reduction in the Defendant's adjusted offense level, based upon the Defendant's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct, which included his voluntarily submitting to a proffer session with this Office in which he fully discussed the facts of the offense. This Office further agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **one (1)** level decrease in recognition of the Defendant's timely notification of his intention to plead guilty, for a total acceptance of responsibility reduction of **three (3)** levels. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If this **three (3)** level reduction is granted by the Court at sentencing, the defendant's final adjusted offense level will be a level **thirteen (13).**

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics or sentencing guidelines factors set forth in the United States Sentencing Guidelines will be raised or are in dispute. The parties each further agree that

4

if either party intends to argue at sentencing for potential departures under the Sentencing Guidelines or adjustments pursuant to 18 U.S.C. § 3553(a), they will notify the other party in writing at least **four (4) weeks** in advance of the scheduled date of the sentencing hearing.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend that the defendant be sentenced at the lower end of the guideline range applicable to the defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

11. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (a) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (b) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Pre-sentence Report, or (c) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Jefferson M. Gray
Assistant United States Attorney

6

      I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2-20-09
Date

Jason Michael Foor

      I am Mr. Foor's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/20/09
Date

Katherine Newberger, Esq.

7

## ATTACHMENT A
## STATEMENT OF FACTS

From on or about March 5, 2004, and continuing thereafter until on or about May 21, 2004, defendant **JASON FOOR** and William H.S. Garrison did conspire, confederate and agree to defraud the United States Small Business Administration (SBA) of its right to have its business affairs conducted free from fraud and dishonesty. Specifically, **FOOR** and Garrison conspired to make it appear that **FOOR** had made a required cash injection into a new business for which he had sought a small business start-up loan, whereas in fact **FOOR** had borrowed half of the required sum from Garrison, who took the money back as soon as the small business loan sought by **FOOR** was extended.

In the year 2003, **FOOR** was an experienced auto detailer who was working at Koon's Ford when he conceived the idea of opening his own painting/detailing business for motorcycles, which was to be known as "Jay's Custom Cycles." **FOOR** met with David Steinhoff, a loan officer for the Anne Arundel County Economic Development Corporation (AAEDC), to discuss the possibility of obtaining a small business loan. Steinhoff encouraged him to develop a business plan and to apply for a loan in the amount of $120,000.00.

Although Steinhoff favored approving the loan, on behalf of the AAEDC he applied to the United States Small Business Administration (SBA) for a guarantee covering 85% of the value of the loan. The SBA approved the AAEDC's request on March 3, 2004, but made its approval contingent on the AAEDC obtaining evidence from **FOOR** prior to disbursement of the loan that "[a]t least $30,000.00 has been injected into the business as equity capital" to help cover the business's start-up costs. The terms of the SBA's Guaranty were expressly incorporated into and made a condition of the AAEDC's loan to **FOOR**, and Steinhoff personally discussed this requirement with **FOOR**.

By this time, **FOOR** had lost his job at Koon's Ford as a result of an accident and a subsequent workmen's compensation dispute, and therefore was unable to meet the SBA's $30,000 requirement. **FOOR** therefore turned for assistance to a close friend, William H.S. Garrison, who owned his own construction business (W.H.S. Garrison Construction, Inc.).

On or about March 5, 2004, **FOOR** asked Garrison's mother – who often assisted her son with secretarial help relating to his business – to prepare a letter ostensibly from Garrison and on the letterhead of Garrison's business. This letter stated that Garrison planned to make a gift to **FOOR** of $30,000 to help establish his motorcycle shop, Custom Cycles. The letter did not carry Garrison's signature, but instead bore the initials "WG" on its signature line. **FOOR** transmitted this to the AAEDC as initial substantiation of his ability to comply with the cash injection requirement.

1

**FOOR** apparently expected to be able to demonstrate that he had spent funds totaling half of the required $30,000.00 cash injection, but he asked Garrison if he would loan him $15,000 so that he could show the full $30,000 required. Garrison agreed. Garrison knew that **FOOR** needed to be able to show these funds so he could obtain a loan in connection with his proposed new business. Because Garrison's payroll account for his construction business and the account for Jay's Custom Cycles were both located at Provident Bank, the transfer of funds from Garrison's account to that of Jay's Custom Cycles could easily be reversed.

On Thursday, April 1, 2004, **FOOR** and Garrison went to the Old Mill branch of Provident Bank and met with the branch manager. The two men explained that they wanted to transfer $15,000 from the payroll account of Garrison's business to the account of Jay's Custom Cycles. However, Garrison emphasized that he would need the money returned to the WHS Garrison Payroll account before the following Friday, April 8, when he would issue his next round of paychecks. **FOOR** confirmed to the branch manager that it was acceptable to him for the $15,000 transfer to be reversed in this manner. The branch manager advised the two men that she could reverse the transaction if she received instructions to do so from Garrison.

Also on April 1, 2004, **FOOR** established an additional bank account for Jay's Custom Cycles at First Mariner Bank. **FOOR** used this account to receive the proceeds of the AAEDC loan four days later, as well as to receive subsequent disbursements on the loan. He thereafter made little additional use of the Provident Bank account which had received the Garrison funds in connection with his business.

Prior to the closing of the AAEDC loan on Monday, April 5th, **FOOR** provided the AAEDC with an "Itemized List of Cash Injected" to confirm that he had met the requirement of injecting $30,000 of his own cash into Jay's Custom Cycles. This itemization listed $15,570 as liquid capital held in the business's checking account, almost all of which was derived from Garrison's transfer on April 1st, and approximately $16,000 in other expenditures – at least one of which, for $1,556.63 from Eastern Plate Glass, had not actually been incurred. **FOOR** also provided the AAEDC with certified copies of the records of the Jay's Custom Cycles account at Provident Bank reflecting the $15,000 cash injection on April 1st, which he had obtained from the branch manager.

On Wednesday, April 5th, the SBA-guaranteed AAEDC loan to Jay's Custom Cycles went to settlement, and a total of $66,083.04 was disbursed by the AAEDC to Jay's Custom Cycles as working capital ($50,000.00) and in payment of various vendors for equipment purchased by **FOOR** ($16,083.04). **FOOR** advised Garrison that the loan had gone through, and the following morning, the branch manager at Provident Bank reversed the April 1st $15,000 transfer from Garrison's payroll account into the Jay's Custom Cycles account, either pursuant to an understanding reached on April 1st or in response to a subsequent contact from Garrison.

2

Following the disbursement of the original $66,083.04 and the payment of $3,425 in closing costs, **FOOR** was required to submit invoices for expenses he had incurred to the AAEDC to receive disbursements of the remaining $50,0000. Each of these additional disbursements required the execution of a separate SBA settlement sheet, whereby **FOOR** acknowledged the federal criminal penalties for making false statements and represented that the proceeds sought "will be, and all previous disbursements have been, used in accordance with the Loan Authorization." The remaining $50,0000 in loan proceeds was disbursed in a series of payments between April 20 and May 21, 2004. However, as to two of the invoices that **FOOR** submitted to the AAEDC and received payment for in this time frame – a $9,402.96 invoice that was paid by the AAEDC to Jay's Custom Cycles and Garrison Supply, Inc. on April 23, 2004, and a $7,000 invoice that was paid by the AAEDC to Jay's Custom Cycles and WHS/Garrison Construction on May 20, 2004 – these expenses were not actually incurred by Jay's Custom Cycles, and none of these funds were ever disbursed to Garrison. Similarly, an invoice for $3,189.31 from Pax Tools that **FOOR** submitted to AAEDC and received payment for has been identified as fraudulent by Dana Paxton, the owner of Pax Tools. Mr. Paxton also stated that the signature on the joint check issued by AAEDC to **FOOR** and Pax Tools for this expense was not his, and that he never received these funds.

**FOOR**'s business quickly failed and ceased operations during the summer of 2004. **FOOR** never actually made a single payment on the loan he received from AAEDC. Once **FOOR** defaulted on his loan repayments, the AAEDC called its guaranty with the SBA and received a payment of $102,000.00 from the SBA in accordance with its commitment on the loan extended to **FOOR** and Jay's Custom Cycles loan. The total amount of the loss suffered by the AAEDC and the SBA was $120,000.00.